# IN THE COURT OF APPEALS OF IOWA

No. 23-1093
Filed September 27, 2023

**IN THE INTEREST OF A.P.,**
**Minor Child,**

**S.P., Mother,**
       Appellant.
_____


       Appeal from the Iowa District Court for Clinton County, Kimberly K.

Shepherd, District Associate Judge.


       A mother appeals from the termination of her parental rights to her child.

**AFFIRMED.**


       J. David Zimmerman, Clinton, for appellant mother.

       Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney

General, for appellee State.

       Gina L. Kramer, Dubuque, attorney and guardian ad litem for minor child.


       Considered by Tabor, P.J., Buller, J., and Danilson, S.J.*

       *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**DANILSON, Senior Judge.**

A mother appeals from the termination of her parental rights to her child, born in 2021.[1]  She contends the State failed to prove the grounds for termination cited by the juvenile court, termination was not in the child's best interests, and the department failed to provide reasonable efforts.  Upon our review, we affirm.

## I.      *Background Facts and Proceedings*

This family came to attention of the department of health and human services in December 2021, when A.P. and the mother tested positive for illegal substances (marijuana and THC) at the time of A.P.'s birth.  Shortly thereafter, the mother tested positive for methamphetamine and amphetamine.  There were also concerns about domestic violence in the home.  In February 2022, the mother went to inpatient substance-abuse treatment, which she completed successfully.  Shortly after her discharge in March, she was arrested for stabbing her paramour, Chris, with scissors.[2]  The child was removed from the mother's care, adjudicated in need of assistance, and placed in foster care, where she has remained.

In April, the mother again entered inpatient treatment, but she left the program and relapsed.  Meanwhile, the mother and Chris continued to be in a relationship.  In May, following a hearing, the juvenile court entered a dispositional order noting the mother "reports she is getting back into a substance abuse treatment program."  The court "emphasized to the mother the importance of time, particularly given the age of the child, and told the mother she has no time to waste

---

[1] The putative fathers' parental rights were also terminated; no father appeals.
[2] The State later dismissed its domestic charge against the mother, and a no-contact order was also dismissed.

in seeking the treatment that she clearly needs." The mother went back to inpatient treatment, but she was unsuccessfully discharged "due to fighting."

In August, following a dispositional review hearing, the court stated, "Since the last hearing, the mother has failed to address her mental health, has been in and out of substance abuse treatment, and has been inconsistent in staying in contact with her child, stating she has 'a lot going on.'" The court found the child could not be safely placed in the mother's care, noting, "The mother has lost precious, crucial months in bonding time with this child."

By the following month, the mother had reentered inpatient treatment and participated in visits with the child at the treatment center. Following a permanency hearing in November, the court entered an order noting, "Since the last hearing, the mother has been diligently working on maintaining her sobriety." The court further noted, "The visits between the child and the mother are going well, and the mother is establishing a strong bond with the child." In light of the mother's progress, the court granted her a six-month extension to continue to work toward reunification.

The mother was discharged successfully from inpatient treatment in December. However, she moved back in with Chris and shortly thereafter, "there was an argument between the two of them and [the mother] relapsed on methamphetamine." In late January 2023, the mother was arrested on an active warrant from 2020, and she was incarcerated for ten days.

The court entered a review order in February, noting that "[s]ince [the six-month extension was granted], the mother has taken a giant step backward in her progress toward completing the Case Plan goals" "[d]espite repeated warnings the

Court has given the mother about the short timelines of this case." The court denied the mother's request for a second extension and determined a change of the permanency goal from reunification to termination of parental rights was in the child's best interests.

The termination hearing took place in May. The parties agreed the mother was employed, had "appropriate" housing, and was participating in substance-abuse and mental-health counseling. The mother testified her last date of use was in the "middle of January" and she felt her treatment was going "better" than it had in the past. She further stated she was no longer in a relationship with Chris and she had last spoken to him at the "[e]nd of February, maybe beginning of March." The mother believed she would be ready to care for the child "[i]n the very near future," and she requested "a very short amount of additional time" for her to "work for the return of [A.P.] to her care."

The juvenile court denied the request for an extension and entered an order terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (e), (h), and (*l*) (2023). She appeals.

## II. Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Our paramount concern in termination proceedings is the best interests of the children. *In re L.T.*, 924 N.W.2d 521, 529 (Iowa 2019).

## III. Grounds for Termination

The mother's rights were terminated on multiple grounds; we affirm if any one of the grounds is supported by the record. *See In re A.B.*, 815 N.W.2d 764,

774 (Iowa 2012) ("When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record."). We will focus on paragraph (h). With regard to that section, the mother only appears to challenge the fourth element—whether the child could be returned to her care. This element is satisfied when the State establishes the children cannot be safely returned to the parent at the time of the termination hearing. *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020).

The mother claims, "Reunification between [her] and A.P. was imminent." Perhaps in November 2022 the mother's claim would have been more persuasive. But even after the court granted her additional time, she continued involvement in a domestically-violent relationship and used illegal substances. The mother went to four inpatient treatment programs "during the life of this case"; her last date of discharge was in December 2022. She tested positive for methamphetamine that same month, and she tested positive for THC in February 2023, but she stated her last date of use was in the "middle of January." The mother is twenty-five years old. She testified she first tried drugs at age thirteen and started to use regularly at age seventeen. But she testified her substance-abuse treatment was "going good"—"better" than her "previous attempts."

We commend the mother's continued effort to work on her sobriety. And although the mother appeared to be turning her life around in the several months prior to the termination hearing, her actions were too little too late. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("The changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are

insufficient. . . . [The mother] needed to begin her efforts to pull her life together and resume care for her children much earlier."). The State proved the child could not be safely returned to the mother at the time of the hearing. The mother's challenge to the statutory grounds for termination fails.

## IV. Best Interests

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). The guardian ad litem expressed her "concern[ ] about the judgment or the inability to keep [A.P.] safe that [the mother's history of drug use and involvement in domestic violence] shows. [A.P.] is very young. She is fully dependent on a caretaker to keep her safe." A caseworker further testified, "Although [the mother] has made some progress, it's recent progress. There's not a significant length of stability or sobriety demonstrated, and so it's uncertain whether she will maintain that and be able to be a safe and sober caregiver for her daughter."

We concur the child deserves permanency and an opportunity to be raised in a safe and stable home free of drugs and domestic abuse. *See id.* (noting our statutory best-interests framework considers "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child"); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). Upon our review, we conclude termination is in the child's best interests.

### V.    *Exceptions to Termination*

Once the State has proven grounds for termination, the burden shifts to the parent to prove a permissive exception under section 232.116(3).  *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018).  The mother claims the closeness of the parent-child bond should prompt the court to apply an exception to termination.  *See* Iowa Code § 232.116(3)(c).  Both caseworkers acknowledged a "strong" bond between the mother and A.P., and commented "they seem comfortable when they engage with each other."   However, application of the exception under paragraph (c) "requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'"  *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)).  The mother has not established termination of her rights will be detrimental to the child.

### VI.    *Reasonable Efforts*

The mother asserts on appeal the department failed to provide reasonable efforts by not "increase[ing] her interactions with A.P." after she "made substantial strides in addressing her substance-abuse and mental-health issues."[3]  The State responds that waiting until the termination hearing to raise her complaints about services was too late to preserve error.[4]  We agree.  *See In re T.S.*, 868 N.W.2d

---

[3] Reasonable efforts "covers both the efforts to prevent and eliminate the need for removal."  *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).  "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal."  *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (citation omitted).

[4] Indeed, at the termination hearing, the guardian ad litem observed,

> I think the Court has every hearing we've had warned [the mother] up and down that time was very short and progress needed to be made.   And unfortunately, we're still, even after a six-month extension of time, at fully supervised visits.  There has been talk

425, 442 (Iowa Ct. App. 2015) (noting the parent has the responsibility "to demand other, different, or addition services *prior* to the termination hearing" and when the parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding" or on appeal (citations omitted)). While the record indicates the mother "asked [department caseworkers] for unsupervised or partially supervised" visitation, "raising the issue to someone other than the court does not preserve error." *In re A.M.*, No. 23-1022, 2023 WL 5092472, at *1 (Iowa Ct. App. Aug. 9, 2023) (citing *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002)); *In re L.P.*, No. 22-1824, 2023 WL 1814772, at *3 (Iowa Ct. App. Feb. 8, 2023) ("The mother did not file a motion with the juvenile court requesting increased visitation or moving the location of visitation, waiving the claims on appeal.").

In any event, we find reasonable efforts were made. The juvenile court noted the following services were provided, "Parent Partners, [solutions-based casework], supervised interactions, inpatient and outpatient substance abuse treatment, random drug testing, mental health treatment, SafePath, Parent Pals, transportation, and solution focused meetings." Further, while the mother was in her latest stint of inpatient treatment, the department allowed partial supervised interactions and "some overnights." As the caseworker explained, "Those were granted knowing that they have people there who can supervise." But after the mother's discharge from treatment, the department determined unsupervised visits

about more visits, medical appointments, that sort of thing. There's been no formal request to the Court to—for anything different or that reasonable efforts are not being made.

were not "appropriate yet" because "there's no reassurance that certain individuals aren't around" and "[t]here's no indication that [the mother's sobriety] will be long-term." Under the circumstances, the department's decision to decline the mother's request for unsupervised visitation in her home at this time was reasonable. *See L.M.*, 904 N.W.2d at 839; *L.T.*, 924 N.W.2d at 529 ("[T]he interests of the child take precedence over family reunification.").

We affirm the termination of the mother's parental rights.

**AFFIRMED.**